IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br>　　　　Plaintiff, <br><br>v. <br><br>BENNETT ENTERPRISES, INC. <br>d/b/a RALPHIE'S SPORTS EATERY, <br><br>　　　　Defendant. | CIVIL ACTION NO. 1:23-cv-01758 <br><br>COMPLAINT <br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

The United States Equal Employment Opportunity Commission brings this action against Bennett Enterprises, Inc. d/b/a Ralphie's Sports Eatery to remedy violations of Title VII of the Civil Rights Act of 1964, as amended, Title I of the Americans with Disabilities Act of 1990, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and/or disability and to provide appropriate relief to Charging Party Olivia Thompson (Charging Party). As alleged with greater particularity below, Defendant violated Title VII and the ADA when it discriminated against Charging Party because of race and/or disability and retaliated against her.

## JURISDICTION AND VENUE

1.　　Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act

1

of 1991, 42 U.S.C. § 1981a. This action also is instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) (Title VII), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The alleged unlawful employment practices have been and are being committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division, and within counties served by the United States District Court in Cleveland.

3. Defendant conducts business throughout Northern Ohio and has engaged and continues to engage in unlawful discrimination and retaliation throughout its organization including a failure to hire or rehire Charging Party for any position at any location including Defendant's restaurant in Crawford County.

4. EEOC reasserts as if fully set forth herein the allegations below at Paragraphs 23-24, 30, 33-36, 64-73, and 88-95.

## ADMINISTRATIVE PROCEDURES

5. More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the Cleveland Field Office of the United States Equal Employment Opportunity Commission alleging violations of Title VII and the ADA by Defendant.

6. Defendant appeared before the Cleveland Field Office of the United States Equal Employment Opportunity Commission, presented its response and alleged defenses to the charge filed against it, and submitted to the Cleveland Field Office a Position Statement and sworn statements, by and through counsel.

7. On June 30, 2023, the Cleveland Field Office of the United States Equal Employment Opportunity Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII and the ADA were violated and inviting Defendant to

join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. On July 13, 2023, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## PARTIES

10. Plaintiff, the Equal Employment Opportunity Commission (EEOC or the Commission), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and the ADA and is expressly authorized to bring this action by Section 706(f)(1) ad (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), and Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

11. At all relevant times, Defendant Bennett Enterprises, Inc. (Defendant), an Ohio corporation, has continuously done business in the State of Ohio and has had at least 15 employees.

12. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h), and Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

13. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

14. Defendant is a restaurant and hotel owner-operator in the State of Ohio.

15. Defendant operates restaurants throughout Ohio, including a Ralphie's Sports Eatery restaurant in Galion, Ohio.

16. Charging Party is biracial.

17. Charging Party identifies as a biracial person and, in part, as Black or African American.

18. Charging Party is disabled as defined by the ADA, including a diagnosis of depression, anxiety, and ADHD.

19. Charging Party was employed by Defendant, beginning in October 2019.

20. Charging Party worked in various positions for Defendant, including server, bartender, host, cook, dishwasher, and runner/expo.

21. Charging Party was a hard worker and learned many positions in the restaurant, making her a valuable employee.

22. As of July 2021, Tara Wilson was a General Manager at the restaurant where Charging Party had worked since October 2019.

23. During Charging Party's employment and continuing to present, Mark Wallace has been Defendant's Director of Operations.

24. During the course of Charging Party's employment and continuing to present, Mark Wallace has had authority to hire persons to work for Defendant at the company's Ralphie's Sports Eatery restaurants, including Defendant's restaurant in Galion, Ohio.

25. Charging Party was subjected to a hostile work environment because of race which included, but was not limited to derogatory name-calling, including referring to Black or African American persons as "niggers," calling Charging Party a "little Black girl" and saying she looked like a "little nigger;" mocking Charging Party's disabilities including calling her

4

"stupid" and "retarded;" derogatory and racially-charged remarks made about Black or African American customers; exposing Charging Party to threats and degrading working conditions; reduced or eliminated tip-earning assignments; reduced wage-earning opportunities; interference with schedules; denied breaks including bathroom breaks; denied training; requiring Charging Party to perform supervisory/managerial work without the job title or pay; suspending and disciplining Charging Party; and engaging in other harassing conduct because of race.

26. The harassment continued over an extended period of several months, was repeated frequently, and became a recurrent characteristic of the workplace, including management persistently subjecting Charging Party to hostility, belittling and degrading language, and disparate treatment because of race.

27. The harassment to which Charging Party was subjected was severe or pervasive.

28. Defendant knew or should have known about the harassment but failed to take steps to stop and correct the harassment and prevent it from recurring.

29. Defendant failed to take reasonable steps to prevent harassment from occurring in its Ralphie's Sports Eatery restaurants, including harassment on protected bases such as race or sex. Defendant encouraged, maintained and/or ignored unlawful race-based and sex-based harassment, which dissuaded employees from opposing or reporting harassment and fostered an environment where employees were effectively permitted to engage in unlawful harassment without any meaningful penalty.

30. The harassment to which Charging Party was subjected culminated in tangible job detriment, including denied promotion or advancement opportunities, disciplinary action, suspension, disciplinary probation, termination, and failure to hire or rehire.

31. Charging Party opposed the harassment and asked management and others to stop the harassment and prevent it from recurring. After Charging Party opposed the harassment, it continued.

32. Pursuant to Defendant's policies that existed at the time of Charging Party's employment with Defendant, an employee who believed they were being subjected to conduct that is harassing or may become harassing could discuss that matter with any member of management.

33. After Charging Party opposed the harassment and engaged in protected activity, Defendant subjected her to materially adverse action including but not limited to increasing hostility; interference with wage and tip-earning opportunities; threats and demands; false accusations of poor performance or attendance issues; scheduling and attendance-record manipulation; denied promotion or advancement opportunities; disciplinary action; suspension; disciplinary probation; termination; and failure to hire or rehire.

34. Charging Party was qualified to work in the following capacities for Defendant: server, cook, host, dishwasher, and runner/expo.

35. Charging Party was qualified to work for Defendant as an Assistant Manager.

36. From October 1, 2019, through and including October 14, 2022, there were employment opportunities or vacancies available at one or more of Defendant's Ralphie's Sports Eatery restaurants.

37. From October 1, 2019, through and including October 14, 2022, Defendant permitted management to have non-supervisory employees take on Assistant Manager duties for some period to help determine whether they were qualified to be promoted or hired for an Assistant Manager position.

38. Defendant submitted to the Cleveland Field Office of the U.S. EEOC a letter dated June 13, 2023, signed by its attorney, Rebecca Shope.

39. Defendant, by and through a person with authority to do so, read a final version of the letter that is described in Paragraph 38 before the letter was submitted to the Cleveland Field Office of the U.S. EEOC.

40. Rebecca Shope was authorized by Defendant to submit the letter described in Paragraph 38 to the Cleveland Field Office of the U.S. EEOC.

41. The letter described in Paragraph 38 states, in part, "This letter will set forth the position statement of the Respondent, Bennett Enterprises, LLC d/b/a Ralphie's ('Bennett')."

42. The letter described in Paragraph 38 states, in part, that with the position statement, "Bennett has included the additional declarations of Tara Wilson (**Exhibit 1**) and Mark Wallace (**Exhibit 2**)."

43. Before the declarations of Tara Wilson and Mark Wallace were submitted to the Cleveland Field Office of the U.S. EEOC, Defendant, by and through a person or persons with the authority to do so, read the statements made by Wilson and Wallace in their declarations and took steps to ensure that they were true statements.

44. Before the declarations of Tara Wilson and Mark Wallace were submitted to the Cleveland Field Office of the U.S. EEOC, Defendant, by and through a person or persons with the authority to do so, read the statements made by Wilson and Wallace in their declarations and took steps to ensure that they did not omit material facts.

45. The statements made in the declaration signed by Tara Wilson that Defendant submitted to the Cleveland Field Office of the U.S. EEOC are true statements.

46.     The statements made in the declaration signed by Mark Wallace that Defendant submitted to the Cleveland Field Office of the U.S. EEOC are true statements.

47.     In a declaration that Defendant submitted to the U.S. EEOC, Tara Wilson stated, in part, that Defendant issued disciplinary action to Charging Party and suspended her.

48.     In a declaration that Defendant submitted to the U.S. EEOC, Tara Wilson stated, in part, that Charging Party proposed a work schedule that might work best for her, but that Defendant did not grant her request because it was not aligned with the needs of the restaurant.

49.     In a declaration that Defendant submitted to the U.S. EEOC, Tara Wilson stated, in part, that in the summer of 2022, Charging Party expressed a desire to join management and that Wilson and Mark Wallace talked about potentially bringing her on as an Assistant Manager.

50.     In a declaration that Defendant submitted to the U.S. EEOC, Tara Wilson stated, in part, that Defendant opted not to consider Charging Party for a management title.

51.     With the letter described in Paragraph 38, Defendant submitted to the Cleveland Field Office of the U.S. EEOC a declaration signed by Mark Wallace.

52.     In a declaration that Defendant submitted to the U.S. EEOC, Mark Wallace stated, in part, that in September 2022, Charging Party reached out to him about a possible transfer.

53.     In a declaration that Defendant submitted to the U.S. EEOC, Mark Wallace stated, in part, that he told Charging Party that she would not be permitted to transfer until issues were resolved with management at the restaurant from which she wanted to transfer.

54.     In a declaration that Defendant submitted to the U.S. EEOC, Mark Wallace stated, in part, that in the summer of 2022 he talked to Tara Wilson about Charging Party expressing a desire to join management. Wallace further stated that "While we initially considered the request, her attendance issues served as a barrier to having her in a management level position."

55. In a declaration that Defendant submitted to the U.S. EEOC, Mark Wallace stated, in part, that he reached out to Charging Party about an available cook position.

56. In a declaration that Defendant submitted to the U.S. EEOC, Mark Wallace stated, in part, that the Charging Party "refused to come back as a cook. . . ."

57. Wallace did not state in the declaration that Defendant submitted to the U.S. EEOC that Charging Party could not return to work for Defendant because she had an active claim with the EEOC.

58. As of the date Wallace signed the declaration that was submitted to the U.S. EEOC, Wallace knew that Charging Party could not return to work for Defendant because she had an active claim with the EEOC.

59. In September or October of 2022, Charging Party spoke to Defendant's Director of Human Resources, Susan Baer, regarding her employment or requested from Baer a copy of Charging Party's personnel file or records.

60. During her employment with Defendant, Charging Party expressed a desire to join management.

61. Defendant initially considered Charging Party for a management level position.

62. Defendant opted not to have Charging Party work in a management level position.

63. Defendant opted not to have Charging Party work in management level position because of her alleged attendance issues.

64. Before her separation from Defendant's employ, Charging Party reached out to Mark Wallace about a possible transfer.

9

65. On October 16, 2022, Wallace sent an email dated October 16, 2022, to Defendant's Director of Human Resources, Susan Baer. In that email Wallace made statements about Charging Party.

66. In the email described in Paragraph 65, Wallace said that Charging Party received two written warnings and that the second one was a suspension warning.

67. In the email described in Paragraph 65, Wallace said that while Charging Party was on suspension, she reached out to him about a transfer and he told her to speak with Tara Wilson and another manager whom he referred to in the email as "Kyrin."

68. In the email described in Paragraph 65, Wallace said that after Charging Party met with Wilson and Kyrin, Wilson and Kyrin told him that they did not think that Charging Party "was mentally prepared to come back to work," and that Wallace then called Charging Party and told her that she "needed to either go back and fix things" at the store where Wilson supervised her "or she could choose to leave to company" and he would leave her file open for rehire.

69. The statements that Wallace made in the email described in Paragraph 65 were true statements.

70. Tara Wilson did not agree that Charging Party could be transferred to another restaurant or location.

71. Before Charging Party's separation, Defendant did not transfer Charging Party from the restaurant where she was supervised by Tara Wilson to another location or restaurant.

72. For the period from October 1, 2019, to September 8, 2023, Defendant has promoted or hired persons to work as Assistant Managers in one or more of the locations where it operates Ralphie's Sports Eatery restaurants or has paid persons to work as Assistant Managers in one or more locations.

73. For the period from May 1, 2022, to September 8, 2023, Defendant has promoted or hired persons to work as Assistant Managers in one or more of the locations where it operates Ralphie's Sports Eatery restaurants or has paid persons to work as Assistant Managers in one of those locations.

74. During the course of Charging Party's employment with Defendant and before October 14, 2022, Defendant knew that Charging Party said she has a disability or a record of having a disability.

75. After Charging Party filed a Charge of Discrimination with the U.S. EEOC, Defendant knew that Charging Party said she has a disability or a record of having a disability.

76. During the course of Charging Party's employment with Defendant and before October 14, 2022, Charging Party told management that she has depression, anxiety, and/or ADHD, said she had a record of having one or more of those conditions, or reported experiencing symptoms of one or more of those conditions.

77. Defendant did not offer Charging Party any reasonable accommodations.

78. Defendant did not provide Charging Party any reasonable accommodations.

79. Defendant approved Charging Party to take leave from September 12, 2022, through and including September 16, 2022.

80. Charging Party worked for Defendant on September 19, 2022.

81. Charging Party worked for Defendant on September 20, 2022.

82. Charging Party sent or presented to Tara Wilson a document indicating that for medical and/or health-related reasons Charging Party should not work from September 22, 2022, through and including October 3, 2022.

83. Defendant approved Charging Party to take leave from September 22, 2022, through and including October 3, 2022.

84. Charging Party met with Tara Wilson on October 6, 2022.

85. The written disciplinary notices that Wilson issued to Charging Party were not presented to her for review or signature until October 6, 2022.

86. On October 6, 2022, Wilson told Charging Party that she was being put on a 60-day probationary period.

87. The terms of the probationary period described in Paragraph 86 included that if Charging Party did not work any of the hours that she was scheduled to work, Defendant would take disciplinary action against her including terminating her employment.

88. Defendant did not schedule Charging Party to work any hours at any location after October 3, 2022.

89. Defendant issued a report dated October 14, 2022, indicating that Charging Party had been separated from Defendant's employ.

90. During the course of Charging Party's employment, Defendant expanded its Ralphie's Sports Eatery restaurants to open a new restaurant in Galion, Ohio.

91. Defendant had and continues to have the need to staff the restaurant in Galion, in part because it is the last Ralphie's Sports Eatery restaurant that the company has opened.

92. At the time Charging Party reached out to Mark Wallace about a transfer, there was work available at other locations, including Assistant Manager, cook, and other positions at various locations, including at Defendant's restaurants in Findlay, Kenton, and Galion, Ohio.

93.     From at least January 1, 2022, to September 8, 2023, and continuing, Defendant has had the need to hire persons to work at its restaurant in Galion, including positions for which Charging Party is qualified.

94.     As recently as September 8, 2023, Defendant has stated by and through its official website that it is hiring for all positions at Defendant's restaurant in Galion.

95.     For the period from at least November 11, 2022, to September 8, 2023, Defendant has not hired Charging Party to work in any position at any location, including in Galion.

## COUNT I/TITLE VII VIOLATIONS
### Race Discrimination and Retaliation

96.     As set forth above, Defendant violated Title VII, as amended, when Defendant subjected Charging Party to unlawful harassment because of race.

97.     As set forth above, Defendant violated Title VII, as amended, when Defendant subjected Charging Party to disparate treatment because of race, including but not limited to the adverse employment action listed in the above-numbered Paragraphs, such as denied wage and tip earning opportunities, denied promotion, discipline, suspension, disciplinary probation, denied transfer, termination, failure to hire or rehire, and other disparate terms and conditions of employment.

98.     Charging Party engaged in protected activity, as defined by Title VII, as amended.

99.     As set forth above, Defendant violated Title VII, as amended, when Defendant retaliated against Charging Party because she engaged in protected activity, including but not limited to the materially adverse action listed in the above-numbered Paragraphs, such as denied wage and tip earning opportunities, denied promotion, discipline, suspension, disciplinary probation, denied transfer, termination, failure to hire or rehire, and other materially adverse action.

100. The effect of Defendant's actions complained of above has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect her status as an employee because of race.

101. The effect of Defendant's actions complained of above has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect her status as an employee because she engaged in protected activity.

102. The unlawful employment practices complained of above were intentional.

103. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Charging Party.

## COUNT II/ADA VIOLATIONS
### Discrimination and Retaliation

104. At all relevant times, Charging Party was a person with a disability under Section 3 of the ADA, 42 U.S.C. §12102, as amended (actual disability, record of disability, and/or regarded as disabled).

105. At all relevant times, Charing Party was a qualified individual under Section 101(8) of the ADA, 42 U.S.C. §12111(8), as amended.

106. Defendant discriminated against Charging Party because of disability in violation of Section 102 of the ADA, 42 U.S.C. §12112, as amended, by engaging in prohibited conduct, including but not limited to taking adverse employment action against her because of disability; depriving her of the rights and protections secured by the ADA; failing to engage in the interactive process and otherwise fulfill duties and obligations imposed on employers by the Act; denying reasonable accommodations; subjecting her to disparate treatment; denying her wage and tip-earning opportunities; denying her a promotion to a management level position; denying

14

her a transfer; subjecting her to discipline, suspension, and disciplinary probation; terminating her; and failing to hire or rehire her.

107. Charging Party engaged in protected activity as defined by the ADA, as amended, including requesting reasonable accommodations.

108. As set forth above, Defendant violated the ADA, as amended, when Defendant took materially adverse action against Charging Party because she engaged in protected activity.

109. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Charging Party.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Bennett Enterprises, Inc. d/b/a Ralphie's Sports Eatery (Defendant), its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from discriminating against persons because of race and disability and from engaging in unlawful retaliation.

B. Prohibit Defendant from engaging in attendance and leave practices that discriminate because of race or disability, including policies that limit absences, penalize employees or subject them to adverse action because of absenteeism, and otherwise engage in practices that infringe on rights secured under the ADA and Title VII.

C. Order Defendant to promulgate and carry out policies, practices, and programs which provide equal employment opportunities to persons protected by Title VII and the ADA and that eradicate the effects of its past and present unlawful employment practices, including discrimination and retaliation.

    D.    Order Defendant to make whole Charging Party by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to front pay.

    E.    Order Defendant to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above in amounts to be determined at trial.

    F.    Order Defendant to make whole Charging Party by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial.

    G.    Order Defendant to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

    H.    Grant such further relief as the court deems necessary and proper in the public interest.

    I.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

GWENDOLYN Y. REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel


s/Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney

s/Kate Northrup
KATE NORTHRUP
Supervisory Trial Attorney

s/Sabrina L. Brown
SABRINA L. BROWN, Bar No. 0096700
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Cleveland Field Office
1240 E. 9th St., Suite 3001
Cleveland, Ohio 44199
Sabrina.Brown@eeoc.gov
Phone: (216) 306-1116
Fax: (216) 522-7395